Taliaeerro, J.
The petition sets forth that the Teutonia Insurance Company has, on its own account, with the view of protecting property insured by it against destruction by fire, brought into use “ Babcock’s Eire Extinguisher,” an engine of a small order, which is very useful in tlie quick and easy suppression of fires in many instances, particularly in their incipiency, owing to their aptitude for use at a moment’s notice, the rapidity with which they can ba^transported to the place where a fire occurs, and the facility with which they may be worked, one of the smaller class of them being easily carried and operated by one man; that for several years past the company has, by its agents,. *372 caused these machines to be used to great advantage in the extinguishment of fires — in some instances, by reaching buildings on fire before the large fire engines could be run to the place required, owing to a bad state of roads and other impediments sometimes occurring ; that the plaintiffs have for some time caused these engines to be used at fires together with the common fire engines used by the fire companies, and with their consent and approval, and in all such cases, subordinately to and under the direction of the engineer controlling and directing the operations at fires. The plaintiffs complain that on or about the twenty-sixth of January, 1875, “ The Firemen’s Charitable Association,” availing itself of the exclusive right vested in it by an ordinance of the city of New Orleans to control and direct the means to be used in'the extinguishment of fires, and the members of which association being actuated by malice toward the petitioners, and with the intent of injuring them, did adopt the following resolution, viz:
“ Resolved, That the Chief Engineer of the Fire Department, Thomas O’Connor, be instructed to prevent the Babcock engines from running to fires, and, if they persist, to send them and the men working them to prison.”
The plaintiffs aver that about that time, at a fire on First street, several of the Babcock engines were pushed on in advance of the regular fire department’s engines, and were being successfully used against the progress of the fire when the men working the Babcock engines were interrupted by the Chief Engineer of the Firemen’s Charitable Association, at whose request and by whose direction the men so engaged in operating the Babcock engines were arrested by certain officers of the Metropolitan police force and sent to the lock-up of the Fourth Municipal Police Court, where charges were preferred against them of violating said city ordinance No. 1210 by the said Chief Engineer O’Connor, which they were bound over to answer by the judge of that court.
The plaintiffs charge that the city is without authority to confer upon the said association such exclusive right under its charter, and that the same is repugnant to the principles of common equity and subversive of the same.
The plaintiffs aver they have sustained great damage by the action of the said Chief Engineer O’Connor, the Firemen’s Charitable Association and the Metropolitan police force, and in the full sum of one thousand'dollars, for which said parties are liable in solido; that said parties threaten and intend to further carry out the aforesaid resolution and to prevent plaintiffs from using said extinguisher; that said action will cause them irreparable injury, and that a writ of injunction is necessary to protect the plaintiffs’ rights in the premises.
*373 The plaintiffs prayed that a writ of injunction issue to restrain the defendants from interfering with them in the premises, and they pray judgment in solido against them for one thousand dollars as damages and all costs of suit.
An injunction was granted as prayed for.
The Firemen’s Charitable Association and Thomas O’Connor, Chief Engineer, answered, denying generally and specially all the allegations of the plaintiffs’ petition. They assert the right of the State to confer the exclusive power and authority over the subject of fires to the municipal corporation of New Orleans; that the State has by the city charter granted that exclusive power to the corporation over the subject, and that the eity, in its contract with the Firemen’s Charitable Association to extinguish fires, has conferred, as it had a right to do, upon the said association the authority complained of by plaintiffs.
The defendants answer further that the Babcock Fire Extinguisher, in none of its sizes, shapes and forms, is effectual in extinguishing fire or putting out flame, except in its incipient stage, and owing to the very limited benefit arising at any time'and under any circumstances from the use of such machine, the employment thereof at fires, where its presence is. calculated to produce certain injurious results, is not only inexpedient, but improper, and ought not to be sustained by the court.
The defendants set forth at length the provisions of the city charter on the subject of the extinguishment of fires within its incorporated limits, and claiming the city’s right to adopt any and all proper rules in relation thereto.
The defendants set up a reconventional demand against the plaintiffs of five thousand dollars, as damages caused by the illegal acts and conduct of plaintiffs in the premises, and by expense of attorneys’fees, which defendants have been forced to incur.
The defendants charge that plaintiffs and the Board of Underwriters and other insurance companies and associations of New Orleans have maliciously, improperly and unlawfully combined and confederated together to embarrass the Firemen’s Charitable Association and unjustly and unlawfully to bring about its dissolution.
The defendants pray that on the original, action judgment be rendered in their favor; that plaintiffs be cited to answer defendants’ re-conventional demand; that the injunction be dissolved; that defendants recover from the plaintiffs five thousand dollars, with interest at five per cent, per annum from judicial demand, with costs, etc.
The judgment of the lower court perpetuated the injunction restraining the Firemen’s Charitable Association, and Thomas O’Connor, its chief engineer, and the Board of Metropolitan Police, from carrying *374 into effect the resolution óf the board of directors of the said association, instructing its chief engineer to prevent the Babcock engines from running to fires and to imprison the men working the same. The defendants were restrained by the judgment from interfering with the plaintiffs’ employes in the use of the Babcock extinguishers, as long as they do not interfere with or impede the action of the officers and members of the fire department. The defendants’ reconventional demand was dismissed with costs. The defendants have appealed.
The point made in the defense is that, from the nature of the object or purpose of extinguishing fires, it is essential to efficient action that the means used, the methods adopted and the physical efforts made in resisting the terrible power of the destructive element of fire should be directed by one mind; that there should be unity of action; that the power of the fire engineer during the struggle should be as complete and absolute as that of Csesar at Pharsalia or Napoleon at Austerlitz; and that his movements and operations should not be impeded or interfered with by others using different engines and different methods than his own, he being the judge of what constitutes impediment or interference.
We find no objection to this doctrine. But we do not understand that the plaintiffs assume the right to use their engines at fires where the fire companies are in action, otherwise than under the direction of the managers and subject to their orders. The evidence is that the Baocock extinguisher has been often used in this manner by the consent and under the control of the directors at fires. The proof is abundant that these engines are capable of important services in cases often occurring, where they may hurriedly be sent to a house on fire in time to extinguish the fire before it becomes unmanageable, and which might destroy the building before the heavier and more tardy engines could reach the spot. Outstripping these in speed and successfully performing the work to be done before their arrival, can not be called interfering with or impeding them in the exercise of their functions. It is, we suppose, true from the testimony, that the gas used by the Babcock extinguisher is, within contracted limits, and in the incipient stage of fires, most potent in the destruction of flame, and may be pro . ductive of incalculable benefit in saving buildings from destruction by its prompt and efficient use before the fire gains the ascendancy and bids defiance to all effort to suppress it. Surely in all such cases, and we may easily perceive that very many such may occur, there can be no wrong in resorting to the use of these engines. While, therefore, they are used, without, by such use, interfering with or being in the way of the operations of the fire department, the plaintiffs or others may lawfully use them without incurring responsibility.
*375 We must regard the resolution of the board of directors of the Firemen’s Charitable Association, passed on the twenty-sixth of January, 1875, as more stringent and sweeping than it had the right to pass. Its purport is to abolish the use of the Babcock extinguisher within the limits of the city of New Orleans, under any and all circumstances whatever. The chief engineer is clothed with power and instructed “to prevent the Babcock engines from running to fires,” and the resolution provides that, if they persist, the engineer shall “ send them and the men working them to prison.” This is an unwarranted stretch •of power.
The decree of the lower court was properly rendered.
Judgment affirmed.